Bobby Wayne WOODS, Appellant,

v.

The STATE of Texas, State.

No. 2–98–343–CR.

Court of Appeals of Texas,
Fort Worth.

March 3, 2000.

Shelly D. Fowler, Cleburne, Mark B. Dewitt, Granbury, for Appellant.

Richard Hattox, Dist. Atty., Granbury, for Appellee.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Bobby Wayne Woods was charged with the offense of attempted capital murder. A jury found him guilty and sentenced him to life in prison. Because we have found no reversible error and have overruled all seven points, we affirm.

## BACKGROUND

Eight-year-old Cody Patterson shared a bed with his older sister Sarah in their three bedroom Granbury home. Sarah was eleven-years-old and in the fifth grade. During the early morning hours of April 30, 1997, Cody was awakened by his sister's screams. Fearing for his safety, Cody remained silent while Appellant beat Sarah with his fists. After Appellant finished hitting Sarah, he instructed her and Cody to crawl out their bedroom window. Cody and Sarah obeyed although they were not afforded an opportunity to dress or put on their shoes. Cody testified that he did not want to leave.

After putting Cody and Sarah into a car belonging to his grandmother, Appellant drove four miles to the Thorp Springs Cemetery. On the way, Appellant hit Cody. When they arrived at the cemetery, Appellant ordered Cody to exit the vehicle and for Sarah to lie down in the front seat. Once outside the car, Appellant struck Cody several more times in the head. Appellant also grabbed Cody around the neck, choked him for nearly five minutes, and Cody eventually passed out. When he regained consciousness, Cody believed he was going to die. He could not see well because he was experiencing triple vision, and he did not have enough strength to stand or scream for help.

Schwana Patterson, Cody and Sarah's mother, discovered that Cody and Sarah were missing around 6:00 a.m. on April 30, 1997. After a cursory search of the house and its surroundings revealed that the children had not dressed or gone to school, the authorities were notified. Officer Russell Ford responded and arrived at the Patterson home around 6:46 a.m. Officer Ford inspected the Patterson residence and noticed an open window over the bed in the rear bedroom where Cody and Sarah had been sleeping. The officer concluded that Cody and Sarah had been abducted.

During the course of the day, some of the people who saw Appellant noticed that he had scratches on his face and right arm. Appellant gave at least five different accounts of how the scratches occurred. Appellant told Officer Todd Law that he

received the scratches while hauling off some brush for Ed Blakeney. When Ed Blakeney asked Appellant what had happened to him, Appellant responded that he had been jumped by three guys and that he had run through some briars to escape. Appellant stated to Ann Fifer that he had the shingles. Appellant also told Officer Fred Bauer that he had been scratched by a pet squirrel, but at the police station said it was a cat. As the evidence began to implicate Appellant in Cody and Sarah's disappearance, a team of investigators was assembled to conduct an interview with Appellant.

Officers stopped him on Highway 144. Appellant agreed to follow them to the law enforcement center for questioning. Due to Appellant's inconsistent answers and demeanor during the interview, investigators decided to inform Appellant of his *Miranda* rights. Appellant authorized officers to search his vehicle at that time, and he soon admitted that he had burglarized the Patterson home on April 29, 1997. The affidavit of Chief Deputy Sheriff Larry Goin was presented to Magistrate Judy B. Watson around 6:04 p.m. stating that Appellant had confessed to Goin that Appellant had stolen a VCR and a Sega video game from the Patterson home. Magistrate Watson issued an arrest warrant based on the officer's affidavit and the warrant was executed around 6:30 p.m. that day, April 30, 1997.

Hank Courtney, who was exercising his horse on his lease near the cemetery, discovered Cody at 6:40 p.m. and took him to the nearest house where they called 911. Cody was soon taken by ambulance to Cooks Children's Hospital in Fort Worth. Dr. Jan Leah Lamb treated Cody at the hospital. Cody had suffered a series of depression fractures to the back of his skull, which forced it inward due to the force of the blows. Cody also suffered a series of blows across the front lobe of his skull, which resulted in such severe swelling that there was no shape left. Cody was bruised and had red welts over his

entire body, because he had been beaten badly and stung by ants. Cody also was severely sunburned and dehydrated.

At 8:59 a.m. on May 2, 1997, Magistrate Watson issued a warrant authorizing officers to arrest Appellant for the attempted capital murder of Cody Patterson. Appellant signed a written statement that afternoon:

I WENT INTO THE HOUSE AND GOT THE KIDS FROM THE HOUSE AND LEFT, GOING TO WAL-MART. CODY AND SARAH WERE FIGHTING IN THE CAR.... I REACHED AROUND AND SLAPPED CODY ON HIS ARM. I TURNED AND DROVE TOWARD THE GRAVEYARD. I TOOK CODY OUT OF THE CAR TO TALK TO HIM AND TELL HIM I WAS SORRY FOR HITTING HIM. SARAH SAID SHE WAS GOING TO TELL THEIR MOTHER THAT I HIT CODY. CODY BEGAN TO YELL AT ME AND I HIT CODY TWICE IN THE BACK OF HIS HEAD....

## POINTS ON APPEAL

Appellant argues first that the evidence is factually insufficient to sustain his conviction. Second, he contends that the evidence is legally insufficient. In his third point, Appellant complains that the trial court abused its discretion by allowing Cody to testify without conducting a competency hearing outside the presence of the jury. Fourth, Appellant challenges the trial court's refusal to dismiss the venire panel. Fifth, he argues that the trial court abused its discretion by denying his motion to suppress evidence because of a defect in the April 30, 1997 arrest warrant. Sixth, Appellant contends that the trial court abused its discretion by excluding exculpatory evidence from a co-defendant. And last, Appellant complains that the trial court abused its discretion by admitting duplicative photographs. We will address point five first.

## THE ARREST WARRANT

Article 15.02(2) of the Texas Code of Criminal Procedure provides that a valid warrant must state that the defendant is accused of some offense against the State, naming the offense. *See* TEX.CODE CRIM. PROC. ANN. art. 15.02(2) (Vernon 1977). Appellant's fifth point on appeal complains that the April 30, 1997 arrest warrant was deficient because it did not specifically name the offense for which he was charged, i.e.-burglary; and therefore, all evidence obtained as a result of that arrest was inadmissible at trial.

The purpose of requiring the State to specifically name the offense for which a person is to be arrested is to provide the defendant with notice of the offense for which he is charged. *See Smith v. State,* 811 S.W.2d 665, 669 (Tex.App.—Houston [14 th Dist.] 1991, pet. ref'd). The April 30, 1997 warrant was written on the second page of the deputy sheriff's two-page affidavit that stated probable cause for the arrest. The affidavit described the specific property that was stolen. It included the name of an eye-witness who saw Appellant with possession of the property. It stated that Appellant had confessed that he took the property and that he had pawned it. The final sentence of the affidavit stated that "I [the deputy sheriff] therefore allege that [Appellant], on or about 4–29–97 entered a habitation owned by Schwana Patterson without her consent to commit theft." Because the affidavit and warrant were a single document, Appellant had notice that he was being arrested for entering Schwana's house and taking her property, all without her consent.

In *Dunn v. State,* the Court of Criminal Appeals held that "[e]vidence obtained by a police officer acting in good faith reliance upon a warrant based upon a magistrate's determination of probable cause should not be rendered inadmissible due to a defect found in the warrant subsequent to its execution." 951 S.W.2d 478, 479 (Tex. Crim.App.1997). There is no evidence other than conjecture that the warrant was issued for an improper purpose. In Deputy Goin's affidavit, the magistrate was given probable cause to support the issuance of the April 30 th warrant. The record indicates that Appellant was arrested by officers acting in objective good faith reliance upon that warrant, which was based on probable cause and issued by a neutral magistrate. There were lawful grounds to arrest Appellant for burglary, and the trial court did not abuse its discretion by denying Appellant's motion to suppress evidence. We overrule Appellant's fifth point.

## FACTUAL SUFFICIENCY

Appellant argues that the evidence is factually insufficient to prove beyond a reasonable doubt that he kidnapped Cody Patterson. This court has the authority to review fact questions in criminal cases. *See Clewis v. State,* 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996). In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.'" *Id.* at 129 (citing *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). We may only set aside the verdict if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *See Johnson v. State,* No.1915–98, slip op. at 17, 2000 WL 140257, at *8 (Tex.Crim.App. Feb. 9, 2000). *Clewis,* 922 S.W.2d at 129. In performing this review, we are to give "appropriate deference" to the fact finder. *Clewis,* 922 S.W.2d at 136. We may not reverse the fact finder's decision simply because we may disagree with the result. *See Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Instead, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *See id.*

A person commits the offense of kidnapping if he intentionally or knowingly ab-

ducts another person. *See* TEX. PENAL CODE ANN. § 20.03(a) (Vernon 1994). "Abduct" means to restrain a person with the intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found or using or threatening deadly force. *See* TEX. PENAL CODE ANN. § 20.01(2)(A), (B) (Vernon Supp. 2000). After beating Sarah with his fists and waking Cody, Appellant ordered Cody and Sarah to crawl out their bedroom window around 3:30 a.m. He then loaded the children into a car without their consent and drove them four miles away to a remote cemetery. Cody testified that he did not want to go with Appellant because he feared being beaten. Appellant admitted striking Cody in the car and in the cemetery. Appellant left Cody in the cemetery for roughly fourteen hours after fracturing his skull. There is no evidence that Appellant adopted Cody or that he had court-approved custody. The only evidence that Appellant did not kidnap Cody is Appellant's own testimony stating that he was going to take the children to Wal–Mart and that Schwana knew that he had taken the children riding around late at night on prior occasions. After reviewing the entire record, we hold that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule point one.

## LEGAL SUFFICIENCY

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *See Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim. App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the fact finder. *See Williams v. State*, 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson*, 819 S.W.2d at 846.

Appellant signed a written statement after being charged and arrested for the attempted capital murder of Cody Patterson. Appellant confessed to taking Cody and Sarah from their home and driving them to a remote cemetery. He admitted to hitting Cody in the arm and in the back of the head. Cody testified that he was scared and that he had been awakened by Sarah's screams as Appellant assaulted her. Cody did not want to go and was afraid that he was going to be beaten. Dr. Lamb testified that Cody had suffered a severe beating and sustained severe injuries to his head. Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt. We overrule point two.

## THE COMPETENCY HEARING

■ Whether a child witness is competent to testify is reviewed under an abuse of discretion standard. *See Reyna*

*v. State,* 797 S.W.2d 189, 191 (Tex.App.—Corpus Christi 1990, no pet.). An abuse of discretion occurs where a trial judge acts arbitrarily and unreasonably, without reference to guiding rules or principles of law. *See Breeding v. State,* 809 S.W.2d 661, 663 (Tex.App.—Amarillo 1991, pet. ref'd). A trial court has wide discretion in determining the admissibility of evidence. *See id.; see also Dorsett v. State,* 761 S.W.2d 432, 433 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). To determine whether the trial court abused its discretion, we must review the entire testimony of the child. *See Dufrene v. State,* 853 S.W.2d 86, 88 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

■ Appellant's third point on appeal claims that Cody was not competent to testify. As a general rule, a child is competent to testify unless, after being examined by the court, he does not appear to possess sufficient intellect to relate transactions with respect to which he is interrogated. *See* Tex.R. Evid. 601(a)(2). Inconsistencies and conflicts in the child's testimony do not automatically rule him incompetent; rather, they are simply factors affecting the weight of the child's credibility. *See Upton v. State,* 894 S.W.2d 426, 429 (Tex.App.—Amarillo 1995, pet. ref'd).

After reviewing the record, we hold that the trial court did not abuse its discretion by finding that Cody was competent to testify. Both the prosecutor and the trial judge asked Cody numerous questions to determine whether he knew the difference between a truth and a lie. The prosecutor also asked questions to determine whether Cody was able to accurately perceive the events of the alleged crime and whether Cody could articulate his perceptions in a reliable manner. After hearing Cody's responses and perceiving his demeanor on the witness stand, the trial court reasonably could have concluded that he was competent to testify. We overrule Appellant's third point.

## THE VENIRE PANEL

■ After the voir dire of the venire panel, Appellant's attorney, outside the jury's presence, requested a jury shuffle. When the district clerk returned with the new list, she apologized to the venire panel and stated that "this was Shelly's [Appellant's trial counsel] fault." Appellant's counsel objected and argued that the clerk's comment tainted the entire panel. The trial court then instructed the jury in the exact language Appellant requested: "[y]ou are instructed that the defense or the State has a right to ask for a shuffle. In any event you are instructed not to consider in any way who exercised their right to a jury shuffle." The trial court then denied Appellant's request that the entire panel be dismissed. Appellant's fourth point complains of the denial.

■ Whenever a trial court instructs the jury to disregard an improper comment, it is presumed that the jury will follow the court's instruction unless the remark or comment was so prejudicial or extreme that the instruction is incapable of removing the harm. *See Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Calderon v. State,* 847 S.W.2d 377, 380 (Tex.App.—El Paso 1993, pet. ref'd). Where a prejudicial comment is made in front of a jury, a party complaining of it must develop a sufficient record demonstrating harm. *See Smith v. State,* 907 S.W.2d 522, 527 (Tex.Crim.App. 1995); *Haynes v. State,* 627 S.W.2d 710, 711 (Tex.Crim.App.1982). Because Appellant's counsel did not develop the record and there is no evidence that the court's failure to dismiss the panel contributed to Appellant's conviction, we overrule point four. *See* Tex.R.App. P. 44.2(b); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998) (op. on reh'g), *cert. denied,* —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

## EXCULPATORY EVIDENCE CLAIM

■ Appellant's sixth point contends that the trial court erred by not allowing

allegedly exculpatory evidence in during Appellant's case-in-chief. Appellant argues that the consent to search form of Schwana Patterson contained language that could have undermined the State's theory that Appellant was the person who attempted to murder Cody.

We must evaluate the trial court's ruling under an abuse of discretion standard of review. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex.Crim.App.1990). Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. All relevant evidence generally is admissible. *See* TEX.R. EVID. 402. Appellant's burden as the proponent of the evidence is to demonstrate the consent form's relevancy. *See Alvarado v. State*, 912 S.W.2d 199, 215 (Tex.Crim.App.1995); *Meador v. State*, 812 S.W.2d 330, 333 (Tex.Crim.App.1991).

Appellant has not shown a connection between Schwana Patterson's consent to search form and the issues before the court. There is no evidence to support the inference that the evidence would have been exculpatory or favorable to Appellant. The trial judge determined that Appellant failed to meet his burden of establishing the form's relevance under Rule 401 and we will not reverse a trial court ruling that falls within the zone of reasonable disagreement. *See Green*, 934 S.W.2d at 102; *Montgomery*, 810 S.W.2d at 391 (op. on reh'g). Having carefully considered the evidence, we do not find the trial court abused its discretion by excluding the consent form. We overrule point six.

## THE PHOTOGRAPHS

Appellant argues in his appellate brief that the sixth and seventh photographs of Cody Patterson should not have been admitted because they were cumulative. Appellant failed to identify either photograph by its exhibit number. The reporter's record's master exhibit list indicates that the sixth and seventh photographs of Cody Patterson admitted at trial were State's exhibit numbers 34 and 35. Although Appellant's point could be dismissed for inadequate briefing under TEX.R.APP. P. 38.1(h), we will address its contentions.

State's exhibit number 34 was a 30" × 40" color photograph depicting the injuries to the back of Cody's head. Appellant pointed out that a similar photograph, State's exhibit number 26, had already been admitted and that State's exhibit number 34 should be excluded under Rule 403. A trial court has considerable discretion in deciding whether to admit or exclude photographs into evidence. *See Huffman v. State*, 746 S.W.2d 212, 222 (Tex.Crim.App.1988). Appellate courts are limited to determining whether the danger of unfair prejudice substantially outweighs the photograph's probative value. *See* TEX.R. EVID. 403; *Barnes v. State*, 876 S.W.2d 316, 326 (Tex.Crim.App.), *cert. denied*, 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Tidrow v. State*, 916 S.W.2d 623, 631 (Tex.App.—Fort Worth 1996, no pet.). Among the factors a court may consider are the number of photographs offered, their detail and size, whether in color or black and white, whether close-up, and whether the body is clothed or naked. *See Barnes*, 876 S.W.2d at 326; *Tidrow*, 916 S.W.2d at 631. A court also may consider the availability of other means of proof and circumstances unique to the case. *See Tidrow*, 916 S.W.2d at 631. In short, a photograph should be excluded if it is so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of the case after viewing it. *See id.*

State's exhibit number 34 was offered in conjunction with Dr. Lamb's testimony describing the extent of Cody's head injuries. While a total of seven photographs were entered into evidence, State's exhibit number 34 was the only close-up photograph

showing the back of Cody's head. It was no larger than any of the rest of the photographs. State's exhibit number 26 also showed the back of Cody's head, but it was farther away, taken from a different angle, and not as clear as State's exhibit number 34. We hold that the trial court properly admitted the photograph, and that it is not so horrifying or appalling that a juror of normal sensitivity would have difficulty rationally deciding the critical issues of the case after viewing it. It is relevant to the issues of the trial, and we conclude that it is more probative than prejudicial. *See* Tex.R. Evid. 403.

When State's exhibit number 35 was offered into evidence, Appellant objected, but he failed to state a reason for the objection. To preserve a complaint for appeal, a party must have presented a timely objection stating the specific grounds for the desired ruling if they are not apparent from the context of the objection. *See* Tex.R.App. P. 33.1(a)(1); *Mosley*, 983 S.W.2d at 265. When that is not done, error is not preserved, and the complaint is waived. *See Taylor v. State*, 939 S.W.2d 148, 155 (Tex.Crim.App.1996). Because Appellant failed to preserve error for appellate review of State's exhibit number 35, we overrule point seven.

### CONCLUSION

Because we have found no reversible error and have overruled all seven of Appellant's points, we affirm the trial court's judgment.