In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00019-CR
______________________________


RON JASON DUNN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0216601


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Ron Jason Dunn appeals from his conviction by a jury for the offense of aggravated
sexual assault on a child. The court assessed his punishment at life imprisonment. Four
cases, each involving three counts, were tried together. The cases have been appealed
separately and have been briefed together. 
          Because the briefs and arguments raised therein are identical in all four appeals,
for the reasons stated in Dunn v. State, No. 06-03-00017-CR (Tex. App.‒Texarkana
Oct. 31, 2003, no pet. h.), we likewise resolve the issues in this appeal in favor of the State.
          We affirm the judgment of the trial court.
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 20, 2003
Date Decided:         October 31, 2003

Do Not Publish




   The indictment charged Waller with the aggravated robbery of McPherson, a disabled
individual, on or about August 10, 2002. Bruce E. Williams testified McPherson is mentally
challenged. Jerome Williams gave Waller a ride to McPherson's house August 10, but originally
waited in the car. McPherson testified Waller then asked to borrow some money. McPherson
refused, and a struggle ensued. McPherson testified Waller turned him around and took his wallet
out of his back pocket and removed money. During the struggle, McPherson was scratched on the
ear and neck, and placed in imminent fear of bodily injury. McPherson testified Waller took $25.00
dollars from him. 
Competency to Testify
            Waller's first point of error contends the trial court abused its discretion by finding
McPherson competent to testify. For the sake of convenience, we have categorized Waller's
challenges under three theories. First, we will address whether McPherson understood the moral
obligation to tell the truth. Second, whether McPherson's inability to relate when past events
occurred rendered him incompetent will be examined. Last, we will examine whether McPherson's
occasional confusion rendered him incompetent to testify.
            The determination of the competence of a witness to testify is within the sound discretion of
the trial court, and we review the trial court's ruling on an abuse of discretion standard. Broussard
v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). The test for an abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial
court's action; rather, it is a question of whether the court acted without reference to any guiding
rules or principles, and the mere fact that a trial court may decide a matter within its discretionary
authority differently than an appellate court does not demonstrate such an abuse. Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). The Texas Rules of Evidence
create a presumption that a person is competent to testify. Hollinger v. State, 911 S.W.2d 35, 39
(Tex. App.—Tyler 1995, pet. ref'd); Reyna v. State, 797 S.W.2d 189, 191 (Tex. App.—Corpus
Christi 1990, no pet.); Rodriguez v. State, 772 S.W.2d 167, 170 (Tex. App.—Houston [14th Dist.]
1989, pet. ref'd); see Tex. R. Evid. 601(a)(2). 
            In determining whether a witness is competent to testify, the trial court should consider the
witness' capacity to observe intelligently at the time of the events in question, capacity to recollect
the events in question, and capacity to narrate. Watson v. State, 596 S.W.2d 867, 870 (Tex. Crim.
App. [Panel Op.] 1980); Hollinger, 911 S.W.2d at 39; Rodriguez, 772 S.W.2d at 170; Handel v.
Long Trusts, 757 S.W.2d 848, 854 (Tex. App.—Texarkana 1988, no pet.). "If a person afflicted with
a physical or mental disability possesses sufficient intelligence to receive correct impressions of
events he sees, retains clear recollection of them and is able to communicate them through some
means, there is no reason for rejecting his testimony." Watson, 596 S.W.2d at 870–71; Rodriguez,
772 S.W.2d at 170.
            Waller argues McPherson could not possibly understand and appreciate the consequences
of lying if he could not define the word. However, as Waller correctly acknowledges, a witness is
no longer required to understand the obligation of the oath in order to be found competent. "The
current rule regarding competency of witnesses is virtually identical to its predecessor. Tex. Crim.
Proc. Code Ann. art. 38.06, which it replaces, with the exception that there is no longer a
requirement that the court find a child or other person whose competency is challenged understands
'the obligation of an oath.'" Rodriguez, 772 S.W.2d at 170. The witness, though, must understand
the moral obligation to tell the truth. "The capacity to narrate involves on the one hand, both an
ability to understand the questions asked and to frame intelligent answers and, on the other hand, a
moral responsibility to tell the truth." Watson, 596 S.W.2d at 870; see Torres v. State, 33 S.W.3d
252, 255 (Tex. Crim. App. 2000). Stated another way, "[t]he Court must simply impress on her
mind the duty of being 'truthful.'" Dufrene v. State, 853 S.W.2d 86, 88 (Tex. App.—Houston [14th
Dist.] 1993, pet. ref'd); Gonzales v. State, 748 S.W.2d 510, 512 (Tex. App.—Houston [1st Dist.]
1988, pet. ref'd). Therefore, in order to be competent, McPherson must understand the moral
responsibility to tell the truth.
            After the jury was sworn, but before Waller pled, the trial court held a hearing at Waller's
request on McPherson's competency to testify. Based on some of McPherson's responses, Waller
argues McPherson could not understand and appreciate the consequences of lying, particularly since
McPherson had difficulty defining the truth and a lie. On direct examination, the State asked
McPherson: 
Q.If I said that this pen is blue, is this pen blue?
 
                        A.        Uh-huh. 
 
                        Q.        Is that the truth or a lie?
 
                        A.        Truth.
 
                        Q.        Okay. If I said, Billy, this pen is red - -
 
                        A.        Lie.

                        . . . .
 
Q.All right. And you understand you're under oath? You go to church;
is that right?
 
                        A.        Uh-huh.
 
                        Q.        And what happens to you if you tell lies?
 
                        A.        Then - - then - -
 
                        Q.        It's not good to lie, is it? Or is it good to lie?
                        A.        No.
 
                        Q.        It's not good, is it?
 
                        A.        No.

However, on cross-examination, McPherson had trouble defining what the words truth and lie mean
to him. Although McPherson had difficulty defining truth and lying in the abstract, he demonstrated
he understood the difference in application. McPherson recognized that describing a blue pen as
blue was telling the truth and that describing a blue pen as red was a lie. Just because he was unable
to abstractly define what truth means does not defeat the fact that he understood what was the truth
in application. Further, McPherson acknowledged it was not good to lie. McPherson sufficiently
understood what truth means and recognized he had a moral obligation to tell the truth. 
            Next, Waller contends McPherson's inability to relate when certain events occurred rendered
him incompetent as a witness. In his testimony at trial, McPherson had trouble differentiating
time-related events, such as how many days or years ago events occurred. 
            Part of Waller's argument rests on McPherson's tendency to state that events occurred "last
night" when they clearly did not. At one point, McPherson said Waller raped his mother "last
night."


 At another point in his testimony, McPherson stated the police first interviewed his mother
last night. Waller contends these events obviously did not occur last night. Last, McPherson stated
Waller had come over to his house "last night," even though he had been in jail for several months. 
            Besides the "last night" errors, McPherson made two other time-related mistakes. On direct
examination, McPherson testified he had worked at Piggly-Wiggly for "ten days." However,
McPherson testified on cross-examination he had worked at Piggly-Wiggly for "ten years." The
State argues McPherson was simply "confusing the word days for years." McPherson testified his
mother and grandmother were about the same age.
            Waller argues the above mistakes indicate McPherson did not have the capacity to relate past
events. Even if McPherson's mistakes were not solely attributable to nervousness, they do not
necessarily render him incompetent. While the mistakes create significant doubt as to when the
argument occurred, it does not logically preclude the fact the incident occurred at some point. As
discussed above, other evidence proves Waller and McPherson argued on or about August 10, 2002. 
McPherson's testimony concerning the fight has adequate detail and coherency to render him
competent. 
            Waller contends the current situation is analogous to the situation in Rhea v. State, 705
S.W.2d 165 (Tex. App.—Texarkana 1985, pet. ref'd). Unlike Rhea, most of McPherson's answers
were not "uh-huh." See id. at 167–70. Further, Rhea was based in part on a finding that the witness
did not understand the obligation of the oath. Id. A witness is no longer required to understand the
obligation of the oath, but rather only to understand the moral obligation to tell the truth. Although
McPherson's testimony indicates some doubt as to when the events occurred, his inability to relate
the precise timing of the said events does not necessarily render him incompetent. McPherson
indicated a capacity to relate past events, even though his testimony may be doubted as to when they
occurred. The time-related mistakes relate to credibility, on which we must defer to the jury's
determination.
            In his remaining argument, Waller contends McPherson's testimony concerning the police
reports was so inconsistent that it renders him incompetent. Among other arguments, Waller points
to the fact McPherson testified he wrote one of the reports and read the other report, even though he
testified he could not read. However, McPherson demonstrated some reading ability later in the
proceeding. Waller argues that the conduct indicates McPherson could not observe, recollect, and
narrate consistent past events. At most, this conduct demonstrates inconsistent testimony, which is
a credibility issue for the jury's determination. We cannot conclude the trial court abused its
discretion.
            In determining whether there has been an abuse of discretion, an appellate court must review
the entire testimony of a witness. Woods v. State, 14 S.W.3d 445, 451 (Tex. App.—Fort Worth
2000, no pet.); Dufrene, 853 S.W.2d at 88; Reyna, 797 S.W.2d at 191. Most of McPherson's
testimony at trial involved several sentences and an adequate description of the events. 
Inconsistencies and conflicts in a witness' testimony does not automatically rule him or her
incompetent; rather, they are simply factors affecting the weight of the witness' credibility. Woods,
14 S.W.3d at 451; see Upton v. State, 894 S.W.2d 426, 429 (Tex. App.—Amarillo 1995, pet. ref'd). 
While McPherson's testimony did contain inconsistencies, such considerations relate to the weight
and credibility of the testimony and are the province of the jury. 
            The trial court found McPherson competent to testify. McPherson indicated a knowledge
of what truth was at least in application and indicated that lying was wrong. McPherson's testimony
contained adequate detail and narration. We hold that the trial court did not abuse its discretion.
Sufficiency of the Evidence
            In his second point of error, Waller contends there is insufficient evidence to support his
conviction because McPherson was incompetent to testify. As discussed above, the trial court did
not abuse its discretion in finding McPherson competent to testify. While McPherson's testimony
and the police report introduced into evidence are the only evidence a robbery actually occurred,
there is sufficient corroborating evidence for a rational juror to rely on McPherson's testimony. The
combination of McPherson's testimony and the corroborating evidence provides legally sufficient
evidence to support the verdict. 
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            Waller was charged with the offense of aggravated robbery. Section 29.03 of the Texas Penal
Code provides that a person commits aggravated robbery if "he commits robbery as defined in
Section 29.02," and he "causes bodily injury to another person or threatens or places another person
in fear of imminent bodily injury or death, if the other person is: . . . a disabled person." Tex. Pen.
Code Ann. § 29.03(a) (Vernon 2003). Section 29.03(c) defines "disabled person" as "an individual
with a mental, physical, or developmental disability who is substantially unable to protect himself
from harm." Tex. Pen. Code Ann. § 29.03(c) (Vernon 2003). 
            The indictment required the State to prove that Waller intentionally or knowingly threatened
or placed McPherson in fear of imminent bodily injury or death while in the course of committing
theft and that McPherson was a disabled person.
            Sufficient evidence exists which would allow a rational juror to find all the essential elements
of robbery beyond a reasonable doubt. McPherson testified Waller turned him around and took his
wallet out of his back pocket and removed money. McPherson's testimony is corroborated by other
evidence that indicates an argument occurred between Waller and McPherson on or about August 10,
2002. Jerome Williams gave Waller a ride to McPherson's house that night, but waited in the car. 
McPherson's mother testified that, when she came into the room, Waller and McPherson were
"fighting." Jerome Williams testified that, after hearing "a little argument" while he was waiting
outside, he went into the house and observed Waller and McPherson arguing. The police report,
which was introduced into evidence, states the robbery occurred on or about August 10, 2002. 
Evidence existed that McPherson was placed in fear of imminent bodily injury. Last, evidence was
introduced that McPherson is disabled. 
            McPherson's testimony, combined with the corroboration of the other witnesses, provides
sufficient evidence to allow a rational juror to find all the essential elements of the crime beyond a
reasonable doubt. Therefore, there is legally sufficient evidence to support the jury's verdict.
            For the reasons stated, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          January 8, 2004
Date Decided:             January 14, 2004

Do Not Publish