Rolando GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–87–019–CR.

Court of Appeals of Texas,
Austin.

Nov. 16, 1988.

Rehearing Denied Jan. 11, 1989.

Luis F. Suarez, Houston, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before POWERS, BRADY and ABOUSSIE, JJ.

POWERS, Justice.

Over his plea of not guilty, the jury found Rolando Gonzales guilty of possessing, with intent to deliver, more than 400 grams of the controlled substance cocaine. The jury thereafter assessed his punishment at life imprisonment together with a fine of $250,000.00. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.03(a), (c), (d)(3) (Supp. 1988). The trial court adjudged Gonzales guilty and sentenced him accordingly.

## THE CONTROVERSY

Under authority of a warrant that commanded them to do so, the police entered an apartment on the night of September 11, 1986, to search for controlled substances and to arrest Jose Rodriguez and two "latin males" whose names were unknown, "and such other person or persons whose names, description and identities are unknown who may reside or be found on said place and premises, accused of possessing and concealing said" substances. The police arrested Jose Rodriguez, who lived in the apartment, as well as Gonzales and three other Hispanic men who did not.

On entering the apartment, a police officer handcuffed Gonzales and "frisked" him for weapons. He had none. He made no furtive gestures or suspicious movements.

In searching the apartment, the police found the following items: (1) two packets of cocaine "balls" found in the single bedroom of the small apartment; (2) an unspecified quantity of cocaine found in a "military" jacket in a closet; (3) another controlled substance ("LSD") found on a shelf in the closet; (4) six cocaine "balls" found in a shaving kit at the foot of the bed; and (5) a scale, capable of measuring in grams, found in the closet. Each "ball" or packet of cocaine weighed about one-eighth of an ounce.

About 30 minutes after the police entered the apartment and after discovering the items mentioned in the preceding paragraph, the police arrested Gonzales and searched him to make an "inventory" of his property. An officer found in Gonzales' pocket $1,662 in cash, mostly in twenty-dollar bills, and a "bag" containing a substance that proved to be one-eighth of an ounce of cocaine packaged like those found in the shaving kit. At trial, the court admitted in evidence the $1,662 in cash and the "bag" of cocaine.

On the afternoon of September 12, 1986, the police obtained another search warrant under authority of which they searched Gonzales' residence at another address in the same city. In the search, they found in a closet over two pounds of cocaine (one kilogram) that was introduced in evidence. In yet a third search warrant, the police obtained authority to search Gonzales' safety deposit box at a local bank and found there $67,218 in cash that was also received in evidence by the trial court.

In various points of error, Gonzales contends the trial court erred in receiving in evidence the $1,662 and "bag" of cocaine found in his pocket and the $67,218 found in his safety deposit box at the bank. He does *not* complain of the trial court's receiving in evidence the kilogram of cocaine found in his home, which was the substance intended by the State's allegation that he had possessed, with intent to deliver, more than 400 grams of cocaine.

## SEARCH OF GONZALES' PERSON

Gonzales contends the $1,662 and the "bag" of cocaine found in his pocket were inadmissible because: (1) his arrest did not come within the authorizing terms of the arrest-and-search warrant; and (2) the evidence did not show probable cause for his arrest without a warrant. Consequently, the search of his person may not be termed "incidental" to a lawful arrest. We believe Gonzales' arrest came within the terms of the arrest-and-search warrant and that the search of his person was therefore incidental to a lawful arrest.

The warrant authorized a search of the apartment and the arrest of three categories of persons described on the face of the warrant: (1) those *named* and accused in the attached affidavit of possessing cocaine (Jose Rodriguez); (2) those *described* and accused in the attached affidavit of possessing cocaine (two "latin males"); and (3) any *unknown* persons "who may ... be found on" the premises to be searched and who are "accused of possessing and concealing" cocaine.[1] Concerning the second category of persons, the two "latin males" referred to in the affidavit, it may be that the description was too general even though the scope of the warrant was limited to a single specified apartment. *See* 2 LaFave, *Search and Seizure,* § 4.5(e) at 229 (2d ed. 1987); *Cf. Dow v. State,* 207 Md. 80, 113 A.2d 423 (1955) ("three colored men" in a certain "vicinity" held sufficient as to description of persons while description of place deemed surplusage). A portion of Gonzales' argument is directed at this apparent defect in the warrant under which he was arrested. We believe, however, that he was properly arrested under the warrant because he fell within the third category of persons contemplated in the warrant—unknown persons who may be found in the apartment and who are accused of possessing cocaine.

■ The third category is obviously subject to an argument that it is too general as well. However, the affidavit attached to the warrant, and incorporated therein, narrowed considerably the apparent overbreadth of that category.

The affidavit states Rodriguez had been seen selling or "trafficking" in cocaine inside the apartment within the past 48 hours; and, he and the two "latin males" possessed cocaine, in packets, in connection with those sales transactions. Under these statements in the affidavit, there existed an equal probability that Rodriguez and the two specified "latin males" might or might not be in the apartment when the police entered. But there also existed a likelihood that *other* individuals would be engaged in the "trafficking." We need only concern ourselves with this likelihood—that when the police entered they might find in the apartment *other* individuals in circumstances from which the police might reasonably infer that they were accused in the

---

1. The warrant commanded the police officers to search apartment number 13 at 209 Root Street, Killeen, Texas, for cocaine believed to be kept there, which the police were to seize and bring before the issuing magistrate. The warrant also directed the officers to arrest and bring before the magistrate "each person described and accused" in an attached affidavit, as well as "such other person or persons whose names, description and identities are unknown who may ... be found on said place and premises, accused of possessing ... said [cocaine]."

The attached affidavit informed the officers of the following:

1. On or about September 11, 1986, "Jose Rodriguez and two unknown latin males ... intentionally and knowingly" possessed cocaine in Bell County, which includes the City of Killeen, Texas.
2. The affiant, a police officer for the City of Killeen, believed for good reason that the cocaine was then in Rodriguez' possession at a place "occupied and under the control of the said Jose Rodriguez and other person or persons unknown to" the affiant "by name, identity and description...."
3. The place in question was apartment number 13 at 209 Root Street in Killeen, Texas.
4. "For the past few weeks" preceding the making of the affidavit, the department had "been receiving information and complaints" that Jose Rodriguez had been trafficking in narcotics in the apartment. A confidential informant had given the affiant "the same type of information."
5. Within 48 hours preceding the making of the affidavit, the confidential informant reported to the affiant that "a latin male" known to the informant as "Jose" had admitted the informant to apartment 13.
6. After entering the apartment, the informant saw "several 'packets' of cocaine in possession of Jose and two other latin males whom the [informant] did not know."
7. The informant told the affiant that Jose, the two other "latin males," and the cocaine remained in the apartment when the informant left.
8. The informant had supplied the affiant with similar "information in the past about narcotics trafficking in the Killeen area" which had proved "credible and reliable" after independent investigation by the affiant.
9. The informant was "familiar with cocaine and the way it is packaged for resale because he has both purchased and used cocaine in the past."
10. For the personal safety of the informant, the affiant could not reveal his name.

affidavit of "possessing and concealing" cocaine in the drug "trafficking" attributed to the apartment.

The scope of the authorized search was limited first by its being directed to a single designated apartment. Given the *overt illegality* of the narcotics "trafficking" attributed to the apartment in the affidavit, it is probable that any unknown persons found therein would be a party to the offenses taking place. This is especially the case when the affidavit recites that the cocaine was being possessed and sold in the apartment in "packet" or marketable form. The *setting* thus established by the affidavit supports the probability that cocaine would be found on any unknown persons found in the apartment with Rodriguez. For the foregoing reasons, the warrant and affidavit designated in a *functional* way the unknown persons to be arrested; and they did so with a precision that corresponds fairly to that achieved by very common personal names or by a general physical description. It was a description reasonably fitted to the circumstances of the case. LaFave, *supra,* at 230.

In *Lippert v. State,* 664 S.W.2d 712 (Tex. Cr.App.1984), the Court discussed at length the principles involved in the present appeal. The *circumstances of the arrest and search* and the affidavit supporting the search-and-arrest warrant in that case are very similar to those in the present case. We refer to the affidavit statement in *Lippert* that narcotics were being sold from a particular dwelling; and to the facts surrounding Lippert's detention: a fruitless "frisk" of his person for weapons, the discovery of narcotics in plain view, and his arrest and the personal search in which the police found narcotics on his person. The distinction between *Lippert* and the present case lies, however, in the *quite different terms of the arrest warrants* in the two cases.

The *warrant* issued in *Lippert* directed *only* the arrest of two *named* individuals (neither of which was Lippert) and "contained no provision to bring before the magistrate all persons found on said premises or making escape therefrom." 664

S.W.2d at 716. The warrant in Gonzales' case is distinctly different, of course, in that it expressly authorized the arrest of unknown persons of the class described above.

■ We hold the warrant in the present case included Gonzales in the third class of persons whose arrest was authorized. We hold as well that the description of that class is not so general that it permitted indiscriminate arrests and searches of a large number of persons in violation of the applicable statutory and constitutional provision. We therefore overrule the point of error.

### SEARCH OF GONZALES' SAFETY–DEPOSIT BOX

Immediately after Gonzales' arrest, the police obtained from a magistrate a warrant authorizing the search of a specified safety-deposit box he had maintained for some time at a designated bank in Killeen. In the ensuing search, the police found in the box $67,218 which the trial court received in evidence over Gonzales' objection. Gonzales contends the supporting affidavit did not establish probable cause for issuance of the warrant. We disagree.

A warrant may not issue "unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." Tex. Code Cr.P.Ann. art. 18.01(b) (Supp.1988). The words "probable cause" do not imply mere suspicion, nor do they imply certainty. Rather, they imply facts and circumstances that justify a *reasonable inference,* by a person of reasonable caution and prudence, that the instruments or other evidence of a crime will be found in a designated place. The facts and circumstances recited in an affidavit may be based upon the affiant's personal knowledge or upon reasonably trustworthy information supplied him by others. In reviewing the probable-cause determination of the issuing magistrate, we must decide from "the totality of the circumstances," described in the supporting affidavit, whether there existed "a substantial basis for" the magistrate's conclusion "that probable

cause existed...." *Eisenhauer v. State,* 754 S.W.2d 159, 164 (Tex.Cr.App.1988).

Probable cause has an important *time* element. Probable cause ceases to exist when *it is no longer reasonable* to presume that items, once located in a specified place, are *still* there. Conversely, it *may be reasonable* under all the circumstances to presume that they are *still* where they once were—even after a considerable lapse of time.

> The substantive question is whether probable cause existed at the time the warrant issued to believe that the items were still located [at the place to be searched]. [citation omitted].
>
> Probable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's [sic] issuance. [citations omitted]. The significance of the length of time between the point probable cause arose and when the warrant issued depends largely upon the property's [sic] nature, [citation omitted]; and should be contemplated in view of the practical considerations of every day life. [citation omitted]. The test is one of common sense.

*United States v. Brinklow,* 560 F.2d 1003, 1005–06 (10th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978) (11–month interval between personal observation of evidence and execution of warrant did not render stale informant's information); *see also United States v. Hershenow,* 680 F.2d 847 (1st Cir.1982) (two years not too remote where information points to illegal activity of continuous nature); *State v. Louchheim,* 296 N.C. 314, 250 S.E.2d 630 (1979) (14 months not too remote where crime was complex and took place over a number of years, and the place to be searched was an "ongoing" business from which the records had never been removed according to an informer who had not seen them there for 14 months).

The length of *time elapsed* and the *nature of the property* to be seized are, of course, important considerations, but not the only considerations, when one evaluates the reasonableness of the magistrate's inference that the property is likely to be found where it was last seen. One may also consider: (1) the *nature of the criminal activity* as likely to be continuous or isolated; and (2) the *likelihood* that the property will have been moved. *United States v. Myers,* 553 F.Supp. 98, 104–05 (D.Kan.1982).

We have referred to the time element of probable cause because, in his argument to this Court, Gonzales isolates and argues from two factors among several considered by the issuing magistrate in assessing whether probable cause existed to authorize a search of Gonzales' safety-deposit box: (1) the affidavit upon which the warrant was issued recited that unnamed bank clerks had seen Gonzales transferring large amounts of cash to and from the box *about a year before* the affidavit was made; and, (2) on one occasion, *the date of which was not stated,* a "white powder substance" had been seen in the box or another Gonzales maintained at the bank. If those were the *only* factors upon which the magistrate acted, we agree they would be too remote in the one particular and too insubstantial in both to justify a probable-cause determination. It is, however, illogical to determine the issue on those two factors alone when there were others recited in the affidavit; and we must, under *Eisenhauer,* determine the issue from "the totality of the circumstances" described in the affidavit. 754 S.W.2d at 164. In that context, as discussed below, the two factors isolated by Gonzales in his argument acquired a *revived* and *additional* logical force *in association* with certain inferences drawn from other events that occurred within the 48 hours preceding the making of the affidavit.

■ In our view, the magistrate who issued the warrant might reasonably have concluded from the affidavit that probable cause existed for believing the safety-deposit box would contain money, derived from the illegal sale of controlled substances, that was subject to forfeiture under Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 5.03(a)(6) (Supp.1988). The affidavit averred as follows:

1. Within the past 48 hours, the police had found over two pounds (one kilogram) of bulk cocaine in Gonzales' residence. This quantity of cocaine supported an inference that Gonzales was a cocaine supplier and dealer. *Alba v. State*, 492 S.W.2d 555, 561 (Tex.Cr.App.1973).

2. Within the past 48 hours, the police had found Gonzales in an apartment at 209 Root Street in Killeen, the apartment having been a place where a confidential informant, of proven reliability, had seen several individuals possessing and "trafficking" in cocaine. Gonzales was searched in the apartment and on his person the police found $1,662 in cash and a packet of suspected cocaine. In searching the apartment, the police found 11 other packets of suspected cocaine, each weighing about one-eighth of an ounce. A "field test" indicated that the packets did indeed contain cocaine. Some of the packets were similar to that found on Gonzales. The large amount of cash found with a packet of suspected cocaine on Gonzales' person, and the other factors mentioned, supported an inference that Gonzales was participating at the time, with knowledge, in an illegal drug transaction.

3. Gonzales presently maintained at the bank a safety-deposit box number 695. On October 9, 1985, a named bank officer had informed the police that "bank clerks" (not named in the affidavit) had seen Gonzales transferring large sums of cash in and out of the box and "frequent" the box "on many occasions." On at least one such occasion, "a bank clerk saw a white powder substance" in the box or in another box maintained by Gonzales at the bank. The date October 9, 1985, was approximately one year before the making of the affidavit. The foregoing supports inferences that Gonzales presently maintained and frequently used the safety-deposit box in which he might yet have large amounts of cash.

4. In the affiant's experience as a police officer, assigned to narcotics investigations for five years, he knew that drug dealers used safety-deposit boxes to conceal and safeguard "drugs, large amounts of currency, financial statements" and other articles relating to illegal-drug transactions. This supplied by implication a link between Gonzales' safety-deposit box and the inferences mentioned above that he was dealing presently in illegal drugs. It is common knowledge that such dealing involves, requires, and results in large amounts of currency. A fairly large sum ($1,622) was found on Gonzales' person, but none was found in his residence. These factors support an inference that the same or similar amounts of cash, *commensurate with the scale of dealing implied by the one kilogram of cocaine*, would be found in the safety-deposit box that Gonzales had maintained for at least a year at the bank, that he used frequently, and in which large sums of cash had been seen.

When we orchestrate the various inferences discussed above, it is apparent to us that the issuing magistrate had a substantial basis for concluding that the safety-deposit box probably contained money or other articles subject to forfeiture under the statute mentioned above. We hold accordingly.

## REVERSIBLE ERROR
## UNDER RULE 403

Gonzales also contends the $67,218 in cash was inadmissible under the provisions of Tex.R.Cr.Evid.Ann. 403 (Pamp. 1988):

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....

The elements of the offense charged against Gonzales were that he (1) knowingly or intentionally (2) possessed (3) cocaine (4) with the intent to deliver it. We believe the $67,218 in cash was circumstantial evidence of the element last named.

Gonzales' subjective intent in possessing the bulk cocaine was not in this case susceptible of proof by direct evidence; rather, it was provable only by circumstantial evidence. *See Taylor v. State*, 684 S.W.2d 682, 684 (Tex.Cr.App.1984).

Evidence was received that the amount of cocaine found in bulk, in Gonzales' residence, would produce a large amount of money if sold in packets. Other evidence suggested that Gonzales made his living by repairing and selling used cars—his counsel argued to the jury from this evidence that "that's how the man makes his money." The evidence does not suggest, however, that the money made in that manner would permit the accumulation of the large amount of cash found in the safety-deposit box.

■ Although there was no direct evidence that the sum found in the box was derived from the illegal sale of narcotics, we believe the money was admissible as circumstantial evidence in light of the inference that Gonzales dealt in drugs, an inference permitted from the large amount of bulk cocaine found in his residence. *Alba v. State, supra.* Together, the cash from his safety-deposit box and the bulk cocaine suggested a scale of narcotics dealing that could only be intentional or knowing. That the State did not establish the source of the money in the safety-deposit box did not control the issue of its admissibility; it affected only the logical weight the jury might assign to the money in considering Gonzales' intent in possessing the bulk cocaine found in his residence. *Lancaster v. State,* 31 S.W. 515, 517 (Tex.Cr.App.1895); *Martin v. State,* 249 S.W. 839, 840 (Tex.Cr. App.1923); 1 Torcia, *Wharton's Criminal Evidence,* § 152, 620–23 (14th ed. 1985).

Given the nature of the issue in question—Gonzales' subjective intent—and the fact that it could only be proved by circumstantial evidence in this case, we believe the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice or the other adverse factors mentioned in Rule 403. We hold in consequence that the trial court did not abuse its discretion in admitting the money in evidence.

### THE CONFIDENTIAL INFORMANT

The trial court denied Gonzales' motion to compel the State to produce at trial the confidential informant upon whom the affi-ant relied in making his affidavit in support of the search-and-arrest warrant pertaining to apartment 13 at 209 Root Street. Gonzales contends the testimony of the informant was necessary to establish that Gonzales was *not* one of the two "latin males" the informant had seen possessing cocaine at that address. That fact was indeed established by the State's affidavit in opposition to the motion.

We hold any error harmless beyond a reasonable doubt. As discussed previously, the search of Gonzales' person was not authorized by the warrant on the ground that he was one of the two "latin males" the informant saw at the apartment; rather, the search was authorized on the ground that the warrant *also* authorized the arrest and search of another class of persons found in the apartment—*unknown* persons "who may ... be found" in the apartment and who were accused under the circumstances of possessing cocaine. Gonzales fell within *this* class for the reasons given previously. We therefore overrule his point of error.

### THE JURY CHARGE

■ Gonzales complains of the following jury instruction:

The defendant is on trial solely on the charge contained in the indictment. The State has introduced in evidence transactions other than the one charged in the indictment in this case, and with reference with those transactions you are instructed that said evidence was admitted only for the purpose of showing intent and knowledge, if it does, you are further charged that if there is any evidence before you in the case tending to show that the defendant committed acts other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed, and if you find and believe beyond a reasonable doubt from such testimony that other acts were committed by the defendant, you may then consider the same in deter-

**816**

mining the purpose for which it was introduced and for no other purpose.

Gonzales contends the instruction constituted an impermissible comment on the weight of the evidence because it assumes the State showed other unadjudicated offenses. We believe the instruction logically refers to Gonzales' possession of a packet of cocaine when he was arrested at the apartment; and it refers as well to any inferences of *previous* illegal drug transactions that might be drawn from his possession of the bulk cocaine or the money found on his person or in his safety-deposit box. The instruction explicitly directs the jury to consider such evidence *only* as it might bear upon Gonzales' intent and knowledge in the offense for which he was on trial—possessing, with intent to deliver, the bulk cocaine found in his residence.

In *Seely v. State*, 139 Tex.Cr.R. 505, 141 S.W.2d 325 (1940), the court held that a similar instruction was not erroneous on the ground that it assumed that the State had shown the defendant's commission of other offenses. The instruction in that case was this: if evidence of other offenses had been adduced in the case, the jury must consider such evidence only if they believed it affected the credibility of the defendant who had testified as a witness. We believe the holding in *Seely* refutes Gonzales' contention here. We hold accordingly and overrule the point of error.

Finding no error, we affirm the judgment below.

BRADY, not participating.