NO. 12-03-00013-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
MANUEL SALAMANCA, JR.                           §                 APPEAL FROM THE 213RD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 TARRANT COUNTY, TEXAS
                                                                                                                                                          
 
MEMORANDUM OPINION
            A jury convicted Appellant Manuel Salamanca, Jr. (“Appellant”) of aggravated sexual assault
and sentenced him to life in prison with no fine. Appellant raises six issues on appeal. We affirm.
 
Background
            Tarrant and Johnson Counties had been plagued by a series of nine aggravated sexual assaults
occurring between August 1996 and March 2002. At least two of the assaults occurred in southwest
Arlington. The police had developed a general description of the culprit and had determined,
through DNA testing, that the same man was the perpetrator in several of the assaults. In most of
the offenses, the assailant had a similar modus operandi, including wearing black gloves, taping the
hands of the victim with duct tape, entering a home when a woman was the only adult present, and
threatening the victim using a knife found in the victim’s home.
            On May 24, 2002, a mother and daughter, the Bruckers, were alone in their home in
Arlington when they heard a noise in their backyard and then inside their home. They called the
police and a neighbor. The neighbor encountered Appellant coming from behind the women’s house
and kept him there by Appellant’s pickup truck awaiting the police. When the police arrived, they
talked with Appellant and were unable to verify his explanation for being in the Bruckers’ back yard. 
They also concluded that he was intoxicated by reason of alcohol. Consequently, the police arrested
Appellant for public intoxication and criminal trespass. 
            At the time of the arrest, the police had Appellant’s truck impounded. Before the truck was
removed from the scene, however, the officers glanced in the truck and saw a pair of black work
gloves.
            As the investigation continued, the police noticed that the Bruckers’ back door was unlocked. 
They also learned that a key for the back door was usually kept hidden in a cabinet on the back
porch, but was missing. An investigator called the police station and was told that Appellant, who
was still in jail, had three loose keys in his property at the jail. Police took the keys back to the
Bruckers’ residence. One of the loose keys was the missing key for the Bruckers’ back door. The
charges against Appellant were upgraded to burglary of a habitation. 
            The Bruckers lived in southwest Arlington, the area where two of the sexual assaults had
recently occurred. The victims of the sexual assaults had reported that the perpetrator wore black
gloves. The officers who arrested Appellant had seen a pair of black gloves in Appellant’s truck. 
Based upon these facts, the police decided to investigate whether Appellant was connected to the
series of aggravated sexual assaults. In pursuing the matter further, they learned that the Cleburne
police department had an “open leadsheet” on Appellant regarding several aggravated sexual assaults
that had occurred in Cleburne. The leadsheet revealed that Appellant’s ex-wife had told police in
1992 that when she and Appellant were together, she had found dark gloves, a dark mask, and a roll
of duct tape underneath the seat of Appellant’s truck. She also told police that when she confronted
Appellant about her finds, he became angry. She reported these matters because of her suspicions
about Appellant and the sexual assaults. The modus operandi of the assailant in the Cleburne
assaults was the same as that of the Arlington serial rapist.
            The police checked Appellant’s criminal history and learned that he had been placed on
deferred adjudication probation for burglary of a habitation after pleading guilty. In that case,
Appellant had parked his vehicle down the street, entered the home of an adult female and her small
child, and stolen a butcher knife. He claimed that he intended to steal a purse or wallet, but left when
a dog in the house started barking. According to Appellant, he had entered and left through the back
of the house and the garage. Appellant’s actions in that case were similar to the modus operandi of
the perpetrator of the serial sexual assaults. 
            Based on the evidence they had developed, the police requested three search warrants: (1)
an “Evidentiary (Body Substances) Search Warrant” to obtain saliva from Appellant for comparison
with the DNA from the series of aggravated sexual assaults, (2) an “Evidentiary Search Warrant”
to search Appellant’s truck further, and (3) a search warrant for Appellant’s residence to look for
items taken from the homes of the victims and to look for photographs or videos the victims said the
Appellant had taken during the assaults. 
            The affidavits in support of the search warrants for body substances and for the truck were
five pages in length, and the affidavit in support of the search warrant for Appellant’s residence was
seven pages. The affidavits included much of the above information, as well as the specific facts of
the sexual assaults against several of the victims and a statement that the Arlington offenses occurred
in close proximity to one another. The affidavits also included other information such as a summary
of the general modus operandi of the perpetrator of the serial sexual assaults, a statement that the
perpetrator wore black gloves during the assaults, and a general description of the perpetrator,
including a statement that he was of small stature and possibly Caucasian. The affidavits also
included statements that the sexual assault victims were Caucasian females, that adult males who
were usually in the homes of the victims were away during the assaults, and that one sexual assault
victim reported her assailant had the odor of alcohol on his breath. Finally, the affidavits emphasized
the factual similarities between the Brucker burglary and the sexual assaults.
            The search warrants were issued, and the police obtained a swab of Appellant’s saliva. 
Testing revealed that Appellant’s DNA matched the DNA obtained from several of the sexual assault
victims. The police again searched Appellant’s truck and removed the black gloves, previously
noted by the officers at the scene of Appellant’s arrest. The search of Appellant’s residence yielded
numerous items of personal belongings taken from a number of the victims, including a victim’s
driver’s license, another victim’s credit card, a pillow case, and items of clothing. The police also
found photographs and videos made during the assaults. The evidence acquired through the search
warrants, including the DNA, led to Appellant’s indictment for aggravated sexual assault of the
victim in this case. 
            Appellant filed motions to suppress the evidence obtained by the police through the three
search warrants. After a hearing, the trial court denied the motions. The jury convicted Appellant
of aggravated sexual assault and sentenced him to life in prison. 
 
Denial of Suppression of Search WarrantsIn six issues on appeal, Appellant contends that the three search warrants were not supported
by probable cause and that the information contained in the search warrant affidavits was “stale.” 
Lack of Probable Cause
            In his first, third, and fifth issues, Appellant contends the trial court erred in denying his
motions to suppress the three search warrants because there was a lack of probable cause for the
magistrate to issue the search warrants. 
            To issue a search warrant, a magistrate must be provided with an affidavit that contains
sufficient information for the magistrate to find probable cause. See Tex. Code Crim. Proc. Ann.
art. 18.01(b)


 (Vernon Supp. 2004). “Probable cause to support the issuance of a search warrant
exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object
of the search is probably on the premises to be searched at the time the warrant is issued.” Cassias
v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); see also Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). Stated another way, the basis of probable cause
is probability. Bower v. State, 769 S.W.2d 887, 902 (Tex. Crim. App. 1989) (emphasis in original)
(citing Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949)). 
The Fourth Amendment requires no more than that the magistrate have a substantial basis for
concluding that a search would uncover evidence of wrongdoing. Swearingen v. State, No. 110-03,
2004 WL 1393813, at *3 (Tex. Crim. App. June 23, 2004) (quoting Gates, 462 U.S. 213, 236, 103
S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983)).
            A magistrate’s decision to issue a search warrant should be given great deference and not
reviewed de novo. Gates, 462 U.S. at 236, 103 S. Ct. 2331. The deference paid to the magistrate’s
determination of probable cause is based on the Fourth Amendment’s strong preference for searches
conducted pursuant to a warrant. Swearingen, 2004 WL 1393813, at *3 (quoting Ornelas v. State,
517 U.S. 690, 698, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).
            In light of these principles, we have reviewed the search warrants, including the facts
contained in the affidavits as discussed above. We conclude that the affidavits contain sufficient
information for the magistrate to have found probable cause to believe that the evidence would be
found as alleged in the affidavits. Appellant’s issues one, three, and five are overruled.
“Stale” Information in Search Warrant
            Appellant, in his second, fourth, and sixth issues, argues that the report made by his ex-wife
to the police in 1992 concerning the items she found in Appellant’s pickup was “stale” and,
therefore, could not support the issuance of the search warrants. 
            Facts attested to in an affidavit supporting a search warrant must have occurred recently
enough to justify a finding of probable cause at the time of issuance. Staines v. State, 659 S.W.2d
50, 53 (Tex. App.—Houston [14th Dist.] 1983, pet. ref’d.). Probable cause ceases to exist when, at
the time the search warrant is issued, it would be unreasonable to presume that the items remain at
the suspected place. Gonzales v. State, 761 S.W.2d 809, 813 (Tex. App.—Austin 1988, pet. ref’d). 
The proper method to determine whether the facts supporting a search warrant have become stale
is to examine, in light of the criminal activity involved, the time elapsing between the occurrence
of the events set out in the affidavit and the time the search warrant was issued. Rowell v. State, 14
S.W.3d 806, 809 (Tex. App.—Houston [1st Dist.] 2000), aff’d, 66 S.W.3d 279 (Tex. Crim. App.
2001).
            Assuming arguendo that the challenged statements are stale, Appellant’s argument still fails. 
The facts contained in the affidavits in support of the three search warrants are virtually identical. 
The affidavits are each five to seven pages long. The statements of which Appellant complains and
contends are stale are recited in one paragraph. We are not persuaded that including a single
paragraph of non-current information is sufficient to render the rest of the affidavit invalid. We hold
that there is sufficient information, exclusive of that information Appellant alleges is “stale,” to
support the finding that probable cause existed to issue each of the search warrants. Therefore, we
overrule Appellant’s second, fourth and sixth issues.
 
Conclusion
            The trial court did not err in denying Appellant’s motions to suppress. Accordingly, the
judgment of the trial court is affirmed.
 



                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered July 21, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 
 
 
 
 
 
 
 
 
 
 
 
(DO NOT PUBLISH)