# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00271-CR
NO. 03-07-00272-CR
NO. 03-07-00273-CR

The State of Texas, Appellant

v.

Stephen Wayne Smith, Appellee

## FROM THE DISTRICT COURT OF COKE COUNTY, 51ST JUDICIAL DISTRICT
## NOS. 1216, 1217 & 1242, HONORABLE BARBARA ANN L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State appeals the district court's order granting appellee Stephen Wayne Smith's motion to suppress a statement he gave to the police.[1] We affirm the order.

## BACKGROUND

On January 19, 2004, Texas Department of Public Safety Sergeant Vincent Luciano applied for a warrant to search the premises at 501 Lometa Road in Coke County and arrest Smith.

---

[1] The underlying indictments accuse Smith of unlawfully possessing a firearm, engaging in organized criminal activity, possessing anhydrous ammonia with the intent to manufacture methamphetamine, and possessing anhydrous ammonia in an improper container. *See* Tex. Penal Code Ann. §§ 46.04, 71.02 (West Supp. 2007); Tex. Health & Safety Code Ann. § 481.124 (West Supp. 2007); Act of May 20, 1993, 76th Leg., R.S., ch. 913, § 1, 1993 Tex. Gen. Laws 3636, *repealed by* Act of May 27, 2005, 79th Leg., R.S., ch. 282, § 11, 2005 Tex. Gen. Laws 841, 860.

The warrant issued, and it was executed the following day. Smith was not on the premises when the search took place. Instead, he was arrested at his parent's house in Robert Lee while the search was ongoing. It was undisputed at the hearing below that the arrest was based solely on the authority granted by the combined search and arrest warrant.[2]  *See Collins v. State*, 339 S.W.2d 913, 915

---

[2]  The arresting officer, the only witness at the suppression hearing, was questioned by Smith's attorney as follows:

> Q. Okay. And so your basis of arresting Mr. Smith . . . was based on the search warrant?
>
> A. Primarily, yes.
>
> Q. Well, you –
>
> A. Yes. Yes, to answer your question. Yes.
>
> Q. Well, is there any other reason why you went over and picked him up and placed him in custody and handcuffed him and searched him?
>
> A. After we found what we found at the scene, as well as the search warrant authority.
>
> Q. Okay. Well, you told [the prosecutor] that your basis of the arrest was the authority the–the Court gave you in the–in the search warrant; isn't that correct.
>
> A. That is.
>
> Q. So that's the reason you arrested him?
>
> A. Yes. Yes.
>
> Q. Okay.
>
> A. Had we not had the search warrant, we would have not arrested him.

(Tex. Crim. App. 1960) (holding that authority to arrest conferred by combined search and arrest warrant was not restricted to premises searched).

Shortly after his arrest, Smith gave a written statement to the police. Smith moved to suppress the statement on the ground that he had been unlawfully arrested. The district court granted the motion after concluding that the affidavit supporting the issuance of the warrant did not state probable cause. The State presents its sole issue as follows: "The State challenges the trial court's granting of the Appellee's motion to suppress statements and claims there was sufficient probable cause to support the search warrant." As its statement of the issue suggests, the State's brief focuses on whether the magistrate had probable cause to order the search. Smith's brief does the same.

In a combined search and arrest warrant, the authorization to arrest is conceptually distinct from the authority to search and must be supported by a showing of probable cause to believe that the person has committed an offense. 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 8.15 (2d ed. 2001); *see* Tex. Code Crim. Proc. Ann. art. 18.03 (West 2005) (search warrant may order arrest if magistrate has probable cause to believe person has committed offense). Smith did not seek to suppress the items seized during the search at 501 Lometa Road.[3] Instead, he sought to suppress his written statement on the ground that it was tainted by an

_____

[3] The return reflects that the officers seized plastic containers with pink and white powder residue, a cell phone, $175 in cash, and miscellaneous papers. There was testimony at the hearing that the papers included letters and bills addressed to Smith at that address. According to the testimony, the officers also found a propane tank containing anhydrous ammonia.

3

unlawful arrest. Because the arrest was based on the warrant, the question presented by the motion to suppress and now on appeal is whether the magistrate had probable cause to order Smith's arrest.

The warrant did not specify the offense for which Smith was to be arrested, but the supporting affidavit accuses Smith of possessing chemicals with the intent to manufacture methamphetamine. *See* Tex. Code Crim. Proc. Ann. art. 15.02(2) (West 2005) (arrest warrant must name offense); *Woods v. State*, 14 S.W.3d 445, 449 (Tex. App.—Fort Worth 2000, no pet.) (holding that affidavit may be considered in determining compliance with article 15.02(2)). Therefore, we review the affidavit to determine whether it gave the magistrate probable cause to believe that Smith was guilty of that offense.

**AFFIDAVIT**

The affidavit Luciano presented to the magistrate describes the premises at 501 Lometa Road as a barn located on 640 acres of fenced land in Coke County. According to the affidavit, the barn contained living quarters that served as Smith's residence, but the factual basis for this assertion is not stated. Although the affidavit included the formal description of the property found in "Coke County Offices," it did not name the property owner or mention utility services.

The affidavit states that on December 15, 2003, Luciano and other officers executed a search warrant at 13445 U.S. 67 in Tom Green County and seized 120 grams of methamphetamine powder and items used to manufacture methamphetamine. Arrested during this search were Sargent Hollis, Sonny Joe Robeson, and Bobby Edward Oxford. These men gave statements implicating the "purported [Tom Green County] property owner," Jimmy Lee Jackson, and two other

4

men, Steven Cliff Perkins and Noe Martinez, Jr., in the production of methamphetamine. There is no mention of Smith in connection with this search.

On January 8, 2004, Luciano and other officers conducted a second search of the Tom Green County premises. This time, the officers seized 351 grams of methamphetamine in solution and items used to manufacture methamphetamine. Jackson, Perkins, and Martinez were arrested during this search, as were Lucas Matthew Collins, Daniel Lee Davis, and Jody Jai Strength. Once again, Smith is not mentioned.

On January 13, 2004, Luciano interviewed Candi Bailey, who was incarcerated in the Runnels County Jail on unrelated charges. Bailey told Luciano that she, Martinez, and Louis Parks had spent the previous four months "gathering" thousands of pills to be used by Jackson to "cook" methamphetamine. According to Bailey, this cook had been scheduled for January 8, 2004. The affidavit states that the police officer who arrested Bailey corroborated this information in his written report which was said to be attached to the affidavit, but the report does not appear in the record. There is no mention of where the January 8 cook was to take place, although we note that this was the date of the second search at the Tom Green County location.

Bailey also told Luciano that she had seen both Jackson and Martinez manufacture methamphetamine, and that Jackson had produced two to four ounces of methamphetamine a day for the previous eight months. Bailey described Jackson as the leader of "this organization" and said that he "would get people hooked on it real bad and get people to do things for him."

In the first reference to Smith found in the probable cause portion of the affidavit, Bailey told Luciano that Smith was a methamphetamine manufacturer who worked with Jackson and

5

had "cooked" on three unspecified occasions. Bailey said that Jackson stored anhydrous ammonia at "Smith's residence." Bailey also said that she had been present when methamphetamine was manufactured at the Lometa Road location, but there is no mention of the date or who else was present. If Bailey told Luciano that Smith lived at 501 Lometa Road, the affidavit does not say so.

The affidavit states that Smith was arrested by a San Angelo police officer on January 9, 2004, for possession of chemicals with intent to manufacture a controlled substance. The circumstances of this arrest are not described. Telephone records examined by Luciano contained records of calls between Jackson's cellular phone and Smith's "residence phone," but the affidavit does not state the location of Smith's residential telephone service. The affidavit states that these calls were "believed to be occurring" on the date of Jackson's arrest, January 8, 2004.

According to the affidavit, Lieutenant Randy Swick of the Tom Green County Sheriff's Office and Sergeant Joe Stokes of the Runnels County Sheriff's Office conducted a surveillance of the Lometa Road premises and "through information developed connected Smith with Jackson." The date of this surveillance is not stated, nor is the information that connected Smith with Jackson described.

The affidavit states that Coke County Sheriff's Deputies Jim Sailer and Marshal Millican "received information in the past that Smith was a methamphetamine 'cook' or manufacturer and on one occasion had learned of a suspected 'cook.'" The source of this information is not disclosed, and the affidavit does not state the date or location of this suspected cook. On an unspecified date, the same deputies saw Jackson, Smith, Perkins, Tony Zebe Bell, and Shannon Maddox driving away from the Lometa Road address. Following a traffic stop, the

6

deputies learned that these persons were on their way to the Tom Green County address mentioned earlier in the affidavit.

Luciano's affidavit also describes and incorporates by reference a search warrant affidavit prepared by Sailer on September 8, 2003.[4] The Sailer affidavit was attached to Luciano's affidavit and appears in the record. *See Barnes v. State*, 876 S.W.2d 316, 327-28 (Tex. Crim. App. 1994) (holding that search warrant affidavit included attached appendices). As related in both affidavits, Sailer received information from a confidential informer on September 6, 2003, that Smith was using the Lometa Road premises to manufacture methamphetamine. The informer had more than once detected at that location the strong chemical smell the informer associated with the "powdering out stage" of methamphetamine production. This informer was shown to be reliable. In his affidavit, Sailer said that the informer had provided information on several past occasions that had been shown to be true and correct and had resulted in the seizure of controlled substances, identification of narcotics traffickers, and more than ten prosecutable cases. Field testing had confirmed the informer's ability to identify controlled substances.

Sailer's affidavit states that the confidential informer had been at the Lometa Road address within the preceding thirty-six hours (in other words, on or about September 6, 2003) where he had seen Smith in possession of methamphetamine powder and delivering methamphetamine to another person. The affidavit also says that on September 7, 2003, Sailer had personally entered the Lometa Road premises with Smith's consent to investigate a disturbance call. While there, Sailer detected "a strong, ether-like chemical smell" and saw a spoon and a small piece of cotton. Through

---

[4] A warrant was issued on that date, but it was never executed.

his training and experience, Sailer knew that "small pieces of cotton are commonly used to filter illegal drugs contained in spoons, prior to the substance being pulled into a syringe for injection." Sailer also saw propane tanks with discolored nozzles. Sailer knew that propane tanks are commonly used by methamphetamine manufacturers to store anhydrous ammonia, and that the ammonia reacts with the metal nozzles to cause the discoloration. According to Sailer's affidavit, anhydrous ammonia is a catalyst used in the methamphetamine manufacturing process. The informer told Sailer that he had once seen Smith place a propane tank in his vehicle; Smith told the informer at that time that he was going to acquire anhydrous ammonia.

In his affidavit, Sailer states that he had seen Bailey at the Lometa Road address within the preceding twenty-four hours (that is, on or about September 7, 2003). Sailer's affidavit also states that Jackson, Maddox, and Bell had been seen at the Lometa Road address, but it does not say when or by whom.[5]

Sailer states in his affidavit that he had been investigating Smith since August 2003. During this investigation, Swick told Sailer that he had "received information" that Smith had stolen anhydrous ammonia and manufactured methamphetamine at the Lometa Road location. The affidavit does not reveal when Swick received this information or provide any basis for concluding that the information was credible.

The Luciano affidavit states that the Lometa Road location and "said suspects" had been under investigation by various law enforcement agencies for "several years." The affidavit

---

[5] Luciano's affidavit states that these persons were seen by Sailer's confidential informer, but Sailer's affidavit does not say this.

states that several of the named individuals had histories of drug related arrests. Smith had six such arrests between 1998 and 2000 in addition to the January 9, 2004 arrest mentioned previously. There is no mention of convictions.

**DISCUSSION**

Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). If the facts presented to the magistrate also establish the existence of probable cause to believe that a person has committed an offense, the magistrate may order the arrest of that person. Tex. Code Crim. Proc. Ann. art. 18.03; *see Sharp v. State*, 67 S.W.2d 513, 517 (Tex. Crim. App. 1984) (holding that arrest warrant may not issue except on finding of probable cause by neutral magistrate). The sufficiency of the affidavit is determined by considering the totality of the circumstances set forth within the four corners of the document. *Illinois v. Gates*, 462 U.S. 213, 234 (1983); *Bradley*, 966 S.W.2d at 873; *Evans v. State*, 530 S.W.2d 932, 936 (Tex. Crim. App. 1975). The issuing magistrate's determination of probable cause must be given great deference and will be sustained if the magistrate had a substantial basis for concluding that probable cause was shown. *See Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990); *State v. Davila*, 169 S.W.3d 735, 738 (Tex. App.—Austin 2005, no pet.).

9

The affidavit presented to the magistrate broadly asserts that: (1) there was an organized group engaged in the manufacture, distribution, and use of methamphetamine; (2) Smith was a methamphetamine cook and a member of this group; (3) Smith and other members of the group used the premises at 501 Lometa Road to manufacture methamphetamine; and (4) the Lometa Road premises was Smith's residence and under his control. Based on the information contained in the affidavit, Luciano believed that "there is evidence of said prior 'cooks' and the items utilized in the clandestine production of methamphetamine . . . at said location."

### Was there an organized group?

The discovery of methamphetamine labs during the December 15, 2003 and January 8, 2004 searches in Tom Green County gave the magistrate reason to believe that Jackson and the other persons arrested during those searches were producing methamphetamine and gave credence to Bailey's claim that Jackson was the leader of an organized ring devoted to the production and distribution of methamphetamine. Smith was not among those arrested during those searches, however.

### Was Smith part of the group?

Bailey's claim that appellant was a methamphetamine cook was corroborated by the facts stated in Sailer's September 2003 affidavit. From Sailer's affidavit, the magistrate learned that a reliable informer told Sailer on September 6, 2003, that Smith was using the Lometa Road premises to manufacture methamphetamine. The informer told Sailer that he had been at the premises on September 6 and had seen Smith possess and deliver methamphetamine. On September

10

7, 2003, Sailer had personally entered the Lometa Road premises with Smith's consent and had detected a strong odor associated with methamphetamine production and seen a suspiciously discolored propane tank and what he believed to be paraphernalia associated with methamphetamine use.

Bailey's claim that Smith was part of Jackson's group was partially corroborated by telephone records showing calls between Jackson and Smith, "believed to be occurring" on the day of Jackson's recent arrest, and by the deputies who saw Smith, Jackson, and others leaving the Lometa Road premises together, albeit on an unknown date. The general statement that other officers had information connecting Smith and Jackson adds little if anything to the probable cause determination without some indication of what the information was. Such a vague and general statement gave the magistrate virtually no basis for making a judgment regarding probable cause. *Gates*, 462 U.S. at 239. Appellant's prior drug-related arrests also added little, given the absence of any details regarding the circumstances of the arrests or any mention of convictions resulting from the arrests.

### Was there a methamphetamine lab at 501 Lometa Road?

Sailer's affidavit gave the magistrate probable cause to believe that methamphetamine was being manufactured at 501 Lometa Road in September 2003. However, the information in Sailer's affidavit was four months old by the time it was presented to the magistrate on January 19, 2004. Probable cause ceases to exist when it is no longer reasonable to presume that items once located in a specified place are still there. *Gonzales v. State*, 761 S.W.2d 809, 813 (Tex. App.—Austin 1988, pet. ref'd). On the other hand, it may be reasonable under all the

11

circumstances to presume that they are still where they once were even after a considerable lapse of time. *Id*. Among the relevant considerations in deciding whether information in a warrant affidavit is stale are the amount of time elapsed, the criminal activity involved, the nature of the suspect property, and the likelihood that the property might have been moved. *Id*.

Luciano's affidavit does not contain any evidence of methamphetamine production at the Lometa Road premises after September 2003. To the contrary, the affidavit suggests that the manufacturing location had been moved to the Tom Green County address searched in December 2003 and January 2004. Bailey told Luciano that she had been present at a methamphetamine cook at 501 Lometa Road, but she did not say when this event took place. Bailey also told Luciano that Jackson stored anhydrous ammonia at Smith's residence, but absent any showing that the barn on Lometa Road was Smith's residence, this information does not support a finding of probable cause to search that location.

Sailer's affidavit states that four members of the suspect group other than Smith had been seen at 501 Lometa Road, but (except for Bailey) it does not say when. Similarly, Luciano's affidavit states that two sheriff's deputies saw Smith, Jackson, and other members of the group driving away from 501 Lometa Road, but the date is unspecified. In light of the fact that the Lometa Road location had been under investigation for several years, it cannot be inferred without additional information that these undated sightings were recent. Luciano's affidavit contains no mention of any activities, criminal or otherwise, at 501 Lometa Road after September 2003.

Finally, Luciano's affidavit states that another police officer had been told that Smith had stolen anhydrous ammonia and had manufactured methamphetamine at the Lometa Road

12

location.  However, in the absence of any showing that this information was either credible or timely, it does not support a finding of probable cause to believe that a methamphetamine lab would be found at 501 Lometa Road on the day the search warrant issued.

### *Did Smith reside at or control 501 Lometa Road?*

Luciano's affidavit refers to the Lometa Road premises as Smith's residence, but the affidavit provides no factual support for this assertion.  The affidavit contains no mention of ownership as reflected in county records, nor does the affidavit describe utility services at that location.

Sailer's affidavit contains credible evidence that Smith was present at 501 Lometa Road on September 6 and 7, 2003, and Smith's consent to Sailer's entry in September is evidence that Smith exercised some degree of control over the premises at that time.  Sailer does not, however, describe seeing any evidence that Smith was living at 501 Lometa Road in September 2003.  Even if the facts stated justify an inference that Smith was using the premises to operate a methamphetamine lab in September 2003, they do not support an inference that Smith lived at or exercised control over the premises in January 2004.

Luciano's affidavit describes only one other occasion on which Smith was seen at 501 Lometa Road.  According to the affidavit, Smith was seen by sheriff's deputies driving away from the Lometa Road address with several other persons, but the date of this incident is not disclosed.  Luciano's affidavit does not make any showing that Smith had been at 501 Lometa Road since September 2003.

## CONCLUSION

Giving the probable cause affidavit the deference it is due, we conclude that the magistrate had a substantial basis for believing that Smith was part of an ongoing methamphetamine production and distribution operation. The magistrate also had a substantial basis for believing that Smith operated a methamphetamine lab at 501 Lometa Road in September 2003. The affidavit did not, however, give the magistrate any basis for believing that the premises were still being used for that purpose, by Smith or anyone else, in January 2004. Moreover, even if the magistrate could reasonably believe that precursor chemicals left over from the unlawful activities four months earlier might still be found on the premises, the affidavit did not demonstrate a continuing connection between Smith and the premises so as to give the magistrate a substantial basis for believing that Smith possessed those left-over chemicals. The affidavit contains no facts indicating that Smith owned the premises at 501 Lometa Road or ever lived there. Smith was shown to have exercised a degree of control over the premises in September 2003, but the affidavit contains no facts indicating that he continued to exercise any care, custody, or control of the premises in January 2004. We hold that the trial court did not err in determining that the affidavit did not state probable cause to arrest Smith for possession of chemicals with intent to manufacture methamphetamine.[6]

The State's point of error is overruled, and the order granting Smith's motion to suppress his written statement is affirmed.

---

[6] We express no opinion as to whether the affidavit gave the magistrate probable cause to order the search of the premises at 501 Lometa Road.

14

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   February 7, 2008

Do Not Publish