Opinion Issued July 3, 2008 















Opinion Issued July 3, 2008








 

     

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-00290-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ALLAN SANTIAGO
SMITH, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 176th District Court

Harris County,
Texas

Trial Court Cause No. 1058169

 








 



MEMORANDUM OPINION

Appellant Allan Santiago
Smith pleaded not guilty to the felony offense of aggravated sexual assault of
a child.  See Tex. Penal Code Ann. § 22.021 (Vernon
Supp. 2007).  The
jury found Smith guilty and assessed punishment at ten years’ confinement.  In eight issues, Smith contends that (1) the
evidence is legally and factually insufficient to support a guilty verdict; (2)
the trial court erred in allowing certain testimony; and (3) his counsel was
constitutionally ineffective.  We affirm.

Background

          In
the fall of 2005, Ivette planned to take two of her children, including her
four-year-old daughter S.H., to her mother and step-father’s house to babysit.  Ivette is the step-daughter of appellant
Smith.  The children did not want to go
and began “throwing a fit.”  When Ivette
asked S.H. why she did not want to go, S.H. told her that Smith “tries to suck
lips.”  Upon hearing this, Ivette took
S.H. to see her day care teacher, J. Forrester, with whom S.H. was very
close.  After S.H. talked with Forrester,
Ivette believed that someone had sexually assaulted S.H.  Ivette then went to her mother-in-law’s house
to discuss the situation with other family members, including her husband’s
uncle, a former district attorney, her husband’s aunt, a former CPS worker, and
her husband’s cousin, a Pasadena police
officer.  They reported the assault to
the police a couple of days later.

          Sergeant
Vasquez responded to the call and interviewed S.H. and her parents.  He then referred the case to the Harris
County Sheriff’s Department.  Harris
County Detective J. Fitzgerald met S.H. at the Children’s Assessment Center
(CAC).  There, forensic interviewer Susan
Odhiambo interviewed S.H. while Fitzgerald observed on closed-circuit
television.  After the interview with
Odhiambo, during which S.H. made a “detailed disclosure” of sexual abuse, Dr.
Reena Isaac, a physician at the CAC, examined S.H.  Isaac did not find any physical signs of
abuse, but S.H. recounted a history of the abuse to Isaac, who transcribed it
in her report.

          At
trial, the defense objected to Odhiambo testifying to S.H.’s statement to her
as hearsay.  The State responded that
Odhiambo was an outcry witness, but then conceded that Forrester would have
been the first outcry witness. 
Accordingly, the judge ruled that Odhiambo could not testify to S.H.’s
statements during the interview.  The
trial court, however, allowed Odhiambo to testify that S.H. made a detailed
disclosure of sexual abuse without providing any specific details.   Odhiambo also testified that the interview was
video recorded.

          Dr.
Isaac testified, without objection, to S.H.’s disclosures to her during S.H.’s
physical examination.  Isaac testified
that S.H. stated that Smith touched her on “her booty and her private
part.”  When Isaac clarified what she
meant, S.H. told Isaac that Smith “put his private part in my honey pot.”  S.H. also told Isaac that Smith asked her,
“Doesn’t this feel good?” to which she responded no.  In response to Isaac’s question, S.H. stated
that “wet stuff” came out of Smith’s private part.  In addition, S.H. told Isaac that she could
not see Smith’s private part, and that this only occurred one time.  The State admitted Isaac’s report without
objection.  The report states: “Child
eventually discloses that Allen [sic] has touched her private part and has
‘wiped her off (her genital area) w/ a towel or toilet paper’ after touching
her w/ his private part.”  The report
also indicates that according to S.H.’s mother, in the year leading up to her
outcry, S.H. began “masturbating/touching herself, touching a 13 y/o boy,” which
continued despite S.H.’s mother’s insistence that it stop.

          S.H.
testified at trial and identified Smith as the perpetrator.  S.H. identified her “middle part” as a body
part no one should touch and the part where she goes “pee-pee.”  She also testified that she calls that part
her “honey pot.”  S.H. stated that she
was in the bathroom with Smith when he pulled down her shorts and his shorts
and underwear, and lay down on the floor. 
At that time, he told S.H. to get on top of him, and S.H. testified that
she got “on his middle part.”  S.H.
testified that it hurt, and she told him it did not feel good when he asked
her.  Following this, Smith got some
toilet paper to wipe S.H.’s private because “he had wet stuff in his
private.”  S.H. testified that, after he
wiped her, she pulled up her pants and went to the living room to watch
cartoons.  During cross-examination, S.H.
testified that her mother helped her to remember what to say at trial.  On re-direct, S.H. testified that she
understood the difference between the truth and a lie, and stated that she had
not lied at trial.  In response to further
defense questioning, she stated that she said what her mother had told her to
say.

          Irene
Smith, appellant’s wife, testified on behalf of Smith.  She had been married to Smith for seventeen
years, and her daughter, S.H.’s mother, has not liked Smith the entire
time.  She further testified that on the
day of the offense, S.H. left her sight only twice, and each time lasted for
one or two minutes only.  The first time,
Irene found S.H. at the entrance to her bedroom, while Smith was using the
restroom.  When she questioned Smith, he
stated that he did not know that S.H. was in the room.  The second time that S.H. left Irene’s sight,
S.H. had returned to the bedroom and said that she wanted Smith to tie her
shoes.

          Smith
also testified at trial.  He denied
committing the offense.  He further
testified that his relationship with his step-daughter had improved over time.

Legal and Factual Sufficiency

          Smith contends that the evidence is
legally and factually insufficient to support a guilty verdict because the
State failed to establish the place and time of the offense and because S.H.’s
accusation is too vague and implausible to support the jury’s finding of guilt.

A. Standard of Review

When evaluating the legal
sufficiency of the evidence, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson
v. Virginia,
443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795,
798 (Tex.
Crim. App. 2005).  The standard is the
same for both direct and circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  We do not
resolve any conflict of fact, weigh any evidence, or evaluate the credibility
of any witnesses, as this was the function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991).  

When evaluating factual
sufficiency, we consider all the evidence in a neutral light to determine
whether the jury was rationally justified in finding guilt beyond a reasonable
doubt.  Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App.
2006).  We will set the verdict aside
only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  Under the first prong of Johnson,
we cannot conclude that a verdict is “clearly wrong” or “manifestly unjust”
simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been on the jury.  Watson, 204 S.W.3d at 417.  Under the second prong of Johnson, we
cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id.  We must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex.
Crim. App. 2003).  

B. 
Sexual Assault of a Child

          A
person commits the offense of sexual assault of a child if the actor
intentionally or knowingly causes the penetration of the sexual organ of a
child by any means.  Tex.
Penal Code Ann.
§ 22.021(a)(1)(B) (Vernon Supp. 2007).  A “child” is defined as a person younger than
seventeen years of age who is not the spouse of the defendant.  Id. § 22.011(c)(1).  Sexual assault of a child is aggravated when
the victim is younger than fourteen years of age.  Id. § 22.021(a)(2)(B).  

C. Sufficiency of the Evidence

          The
indictment alleged that the offense took place “on or about” November 26,
2005.  The testimony at trial suggested
that the offense actually took place on October 29, 2005.  Contrary to Smith’s assertion, the State is
not required to prove the precise date of the offense, “as long as the date is
anterior to the presentment of the indictment and within the statutory
limitation period.”  See Garcia v. State, 981 S.W.2d 683, 685–86 (Tex.
Crim. App. 1998); Sledge v. State,
953 S.W.2d 253, 256 (Tex. Crim. App.
1997).  The fact that the State proved
that the offense occurred on a date earlier than the one alleged in the
indictment, thus, does not render the State’s evidence insufficient.  

S.H.
testified that the sexual assault occurred at Smith’s house in his
bathroom.  Her testimony describing the
assault and its location sufficiently supports a finding that the assault
occurred at Smith’s home.  Smith’s
assertions notwithstanding, the uncorroborated testimony of a sexual assault
victim under fourteen years of age can be sufficient to support a conviction,
without medical or physical evidence. See
Tex.
Code Crim. Proc. Ann. § 38.07 (Vernon Supp. 2007); see also Sandoval v. State, 52 S.W.3d 851, 854 n.1 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d); Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (victim’s testimony alone was
sufficient evidence of penetration and sufficient to identify defendant as
assailant without medical evidence). 

          In a legal sufficiency analysis, we view
the evidence in a light most favorable to the State, and therefore do not
evaluate the credibility of witnesses.  See Dewberry, 4 S.W.3d at 740.   Under this standard, the record reflects
that Smith had sexual intercourse with S.H., and that S.H. identified Smith in
court as the assailant.  We therefore hold that the evidence
is legally sufficient to support the verdict.

D. Factual Sufficiency

Smith
asserts that the evidence is factually insufficient for the same reasons that
he claims the evidence is legally insufficient. 
Smith points to S.H.’s testimony that he claims was too vague and
implausible to support the verdict due to S.H.’s descriptions of male and
female anatomy, her inability to “respond to basic questions about time,
location, or to leading questions,” and the contradictory testimony presented.  In addition, he notes that S.H. testified
that her mother coached her testimony, making it unbelievable.

Smith relies on Sessums v. State to contend that S.H.’s
identification of her and Smith’s sexual organs was too vague to conclude that
the evidence is factually sufficient.  No.
06-02-00149-CR, 2003 WL 21473409, at *2–3 (Tex. App.—Texarkana
June 27, 2003), vacated on other grounds,
2003 WL 22855433 (Tex. Crim. App. 2003) (mem. op., not designated for
publication).  In Sessums, a grandfather was accused of penetrating the child’s anus
with his finger.  Id.  The record contained evidence that the child
stated that Sessums had touched his private parts and his “bobo,” and one
witness testified that the child meant his “bottom” when he said “bobo.”  Id.  The appellate court held that the evidence
was legally insufficient to show that the child was specifically referring to
his anus.  Id.  Similar problems do not exist in this case. 

S.H. testified that Smith
put his “middle part” in her “middle part.” 
She indicated that her middle part, her “honey pot,” and her private
part were all the same areas.  She also
testified that her middle part was “down there,” was a part nobody was supposed
to touch, and affirmed that it was the area from which she goes “pee-pee.”  With respect to Smith, she testified to his
middle part as his private that had “wet stuff.”  Child victims are not expected “to testify
with the same clarity and ability as is expected of mature and capable
adults.”  Villalon v. State, 791
S.W.2d 130, 134 (Tex. Crim. App. 1990).  If
a child has sufficiently communicated to the trier of fact that the touching
occurred to any part of the genitals, then the evidence is sufficient to
support a conviction regardless of the unsophisticated language that the child
uses.  Clark v. State, 558
S.W.2d 887, 889 (Tex. Crim. App. 1977). 
A reasonable juror could have determined that S.H. intended to refer to
her and Smith’s sexual organs when she described them as “middle part,” “down
there,” and the area where she goes “pee-pee.” 
See Guia v. State, 723 S.W.2d 763, 765 (Tex. App.—Dallas 1986,
pet. ref’d) (finding testimony that appellant touched her on her “private
place,” where she “went to the bathroom,” and where she “tee-teed” sufficient
to prove sexual contact); Mallet v. State, 9
S.W.3d 856, 863–64 (Tex. App.—Fort Worth 2000, no pet.) (finding evidence
legally and factually sufficient to support verdict even though child did not
use drawings or anatomically correct dolls to demonstrate that “butt” or
“backside where she goes to the bathroom” referred to anus); Bryant v.
State, 685 S.W.2d 472, 475 (Tex. App.—Fort Worth 1985, pet. ref’d) (holding
child’s testimony to being touched “between the legs” sufficient to prove
sexual contact); Scott v. State, 202 S.W.3d 405, 409–10 (Tex. App.—Texarkana
2006, pet. ref’d) (concluding that child’s use of the term “private areas” and
her failure to use the technical term “genitals” did not render the evidence
legally or factually insufficient).

Smith further contends
that we should reject S.H.’s testimony because the means of, and the physical
manner in which, she described the assault is implausible.  S.H. testified that Smith pulled her shorts
down but did not remove them.  Smith
asserts that a sexual assault would be difficult to manage in such
circumstances.  He points to the
contradictory testimony from Irene Smith that S.H. was out of her sight for only
a couple of minutes at a time.  Smith
cites S.H.’s mother’s testimony confirming that S.H.’s mother had reported to
Irene that S.H. lied a lot.  Smith points
to the fact that he did not spend time with the children and does not have a
history or the profile of a child abuser. 
Smith points to S.H.’s contradictory testimony concerning whether her
mother coached her testimony.

Ultimately, none of this
evidence renders the events to which S.H. testified an impossibility, but
rather raises credibility issues for a fact-finder to resolve.  The jury heard this evidence and was free to
evaluate it.  The fact-finder determines
the weight to place on contradictory testimonial evidence because that
determination depends on the fact-finder’s evaluation of credibility and
demeanor.  Cain v. State, 958
S.W.2d 404, 408–09 (Tex. Crim. App. 1997). 
As the determiner of the credibility of the witnesses, the fact-finder
may choose to believe all, some, or none of the testimony presented.  Id. at 407
n.5.  As an appellate court, we may not
re-weigh the evidence or substitute our judgment for that of the fact-finder.
Johnson v. State, 967 S.W.2d 410,
412 (Tex. Crim. App. 1998); see also Wilson
v. State, 863 S.W.2d 59, 65 (Tex.
Crim. App. 1993); King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).

We hold that the State’s
evidence was not so obviously weak or contrary to the overwhelming weight of
the evidence as to be factually insufficient; factually sufficient evidence therefore
supports the verdict.

Testimony

          In
his third and fourth issues, Smith contends that the trial court erred by
allowing Odhiambo to testify about the interview she conducted with S.H.  We review a trial court’s decision to admit
evidence under an abuse of discretion standard.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We
will not reverse a trial court’s ruling unless that ruling falls outside the
zone of reasonable disagreement.  Burden v. State, 55 S.W.3d 608, 615 (Tex.
Crim. App. 2001).  

Smith first objects to
Odhiambo’s statement that S.H. made a “detailed disclosure of sexual abuse”
because it was impermissible hearsay. 
“Hearsay” is a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of
the matter asserted.  Tex. R. Evid. 801(d).  A declarant need not directly quote an
out-of-court “statement” to run afoul of the hearsay rules.  Head v.
State, 4 S.W.3d 258,
261 (Tex. Crim. App. 1999).  In Head, a child sexual assault case, a witness
related the outcry statements of the victim.  Id.  The police investigator then took the stand.  Id.
 The trial court permitted him to
testify, over objection, that he had taken a statement from the victim and the
victim’s mother, and that these statements were consistent with the testimony
of the outcry witness.  Id. at 260.  The court in Head held that permitting this testimony
was not an abuse of discretion.  Id.  It held that whether disputed testimony is
impermissible hearsay depends on whether it compels an “inescapable conclusion”
that the evidence is being offered to prove the substance of an out-of-court
statement.  Id.
at 262.
 The court went on to note that “the focus of the inquiry should remain on
whether or not the disputed testimony is being offered to prove an
out-of-court statement.”  Id.
at 262 n. 3.  

The record here does not
compel the “inescapable conclusion” that the reason for the testimony was to identify
Smith as the assailant.  Odhiambo did not
testify as to any specifics of S.H.’s disclosure, nor did she state whether
S.H.’s statement was consistent with S.H.’s statement to Dr. Isaac or her
testimony.  Under Head, the trial court did not abuse its discretion in allowing this
testimony.

          Smith
further contends that the trial court erred in allowing Odhiambo to testify
that her interview with S.H. had been video-recorded.  Because the videotape was not offered into
evidence, Smith asserts that the State should not have been allowed to refer to
its to bolster S.H.’s otherwise insufficient statements, thus affecting his
substantial rights.  

          The
record, however, does not contain any evidence to suggest that the State’s
reference to the videotape bolstered S.H.’s testimony.  Odhiambo did not testify as to the contents
of the videotape, nor did she suggest that the videotape was consistent with
S.H.’s later statements.  We hold that
the trial court did not abuse its discretion in allowing this testimony.

Ineffective Assistance of Counsel

          In
his fifth through eighth issues, Smith contends that his counsel rendered
constitutionally ineffective assistance, pointing to counsel’s (1) failure to
object to Isaac’s report and testimony; (2) failure to preserve error by
objecting to all the testimony concerning the videotaped interview; (3) failure
to request a hearing on S.H.’s competency; and (4) failure to request a taint
hearing.

Standard of Review

To prevail on
a claim of ineffective assistance of counsel, the defendant must show that (1)
his counsel’s performance was deficient and (2) a reasonable probability exists
that the result of the proceeding would have been different.  Strickland v. Washington,
466 U.S.
668, 687, 104 S. Ct.
2052, 2064 (1984). The first prong of Strickland requires the defendant
to show that counsel’s performance fell below an objective standard of
reasonableness.  Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Thus,
the defendant must prove objectively, by a preponderance of the evidence, that
his counsel’s representation fell below professional standards.  Mitchell
v. State, 68 S.W.3d 640, 642 (Tex.
Crim. App. 2002).  The second prong
requires the defendant to show a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. See Strickland,
466 U.S. at 693–94, 109 S. Ct. at 2067–68; see
also Thompson, 9 S.W.3d at 812. A reviewing court should indulge a strong
presumption that counsel’s conduct falls within the wide range of reasonable
professional assistance; that is, the defendant must also overcome the
presumption that, under the circumstances, the challenged action “might be
considered sound trial strategy.” Strickland, 466 U.S. at 689, 104 S. Ct.
at 2065. “Any allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.”
Thompson, 9 S.W.3d at 813 (citing McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996)). Under normal circumstances, the record on direct
appeal will not be sufficient to show that counsel’s representation was so
deficient and lacking in tactical or strategic decision making as to overcome
the presumption that counsel’s conduct was reasonable and professional.  Bone v.
State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002).

 

Analysis

The record in this case
does not show any conduct outside the wide range of reasonable professional
assistance, and none of counsel’s alleged errors, if corrected, would have
probably resulted in a different outcome. 
First, counsel could have chosen not to object to Isaac’s report and
testimony for strategic reasons.  It
contained evidence that S.H. had been exhibiting sexualized behavior prior to
the date she reported the offense, including touching the genitals of a
thirteen-year-old boy and a six-year-old boy. 
Counsel presented the theory that S.H. described a sexual assault
because of these experiences and not because Smith assaulted her.  Isaac’s report provided the basis for this
theory.  In addition, Isaac’s report
stated that she found no physical evidence of a sexual assault, which also could
have been advantageous to the defense. 
The record contains no evidence that counsel’s failure to object was for
anything other than strategic reasons.

Smith’s
second contention is that his counsel rendered ineffective assistance because
he failed to object each time testimony about the existence of the videotaped
interview was raised, and thus failed to preserve error.  Because we conclude that the trial court did
not abuse its discretion in allowing the jury to hear testimony about the existence
of a videotape, we hold that counsel was not ineffective for his failure to
object at times where the same or similar testimony was presented to the jury
without objection.   See Gosch v. State, 829 S.W.2d 775, 784 (Tex. Crim. App. 1991). 

Smith’s final
two contentions are that his counsel should have requested a competency hearing
and a taint hearing.  Smith asserts that
because S.H.’s mother had manic depressive disorder and was allegedly raising
her daughter in a dysfunctional home, and because S.H. was of a very young age,
S.H. was incompetent to testify.  He
points to S.H.’s testimony in which S.H. confused time and dates.  Smith also contends that counsel should have
requested a hearing to determine if S.H.’s testimony was tainted because she
testified that her mother had told her what to say in court, and she had
recounted the incident to numerous investigators before testifying at
trial.  We must presume, however, that
counsel had tactical reasons for deciding not to request a competency hearing.  S.H. demonstrated that she understood the
difference between the truth and a lie by her answers to the State’s
questions.  For example, when the State
asked S.H. if the prosecutor said that S.H. was a little boy, would that be the
truth or a lie, S.H. answered that it would be a lie because she is not a
boy.  When the State asked S.H. if told
she was six feet tall, would that be the truth or a lie, S.H. stated that it
would be a lie.  The State also asked if
it said she were a six-year-old girl, would that be the truth or a lie, and
S.H. responded that it would be the truth. 
S.H. further testified both that she was saying what her mother told her
to say and that her mother had not told her what to say and she had not lied at
trial.  “Inconsistencies and conflicts in
the child’s testimony do not automatically rule [the child] incompetent;
rather, they are simply factors affecting the weight of the child’s
credibility.”  Woods v. State, 14 S.W.3d 445, 451 (Tex.
App.—Fort Worth 2000, no pet.) (citing Upton v. State, 894 S.W.2d 426,
429 (Tex. App.—Amarillo 1995, pet. ref’d)). 
Moreover, the jury was fully aware that numerous people discussed the
incident before trial, and was in a position to evaluate whether these
discussions affected S.H.’s story and undermined her credibility.   Smith therefore failed to establish that the
result of the proceeding would have been different if counsel had requested a
competency or taint hearing.  For these
reasons, we overrule this issue as well.




Conclusion

We conclude that legally
and factually sufficient evidence supports the verdict; the trial court did not
err in allowing Odhiambo’s testimony; and the record does not reveal that Smith
received ineffective assistance of counsel. 
Accordingly, we affirm the trial court’s judgment.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

Do not publish.  Tex.
R. App. P. 47.4.